UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>MARJORIE BELSKY, MD; MARIO TARQUINO, MD; MARJORIE BELSKY, MD, INC., doing business as INTEGRATED PAIN SPECIALISTS; and MARIO TARQUINO, MD, INC., DOES 1-100, and ROES 101-200,<br><br>Defendants. | Case No. 2:15-cv-02265-MMD-CWH<br><br>ORDER |
| MARJORIE BELSKY, MD, MARIO TARQUINO, MD, MARJORIE BELSKY, MD, INC. doing business as, INTEGRATED PAIN SPECIALISTS, and MARIO TARQUIN, MD, INC.,<br><br>Counter-claimants,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>Counter-defendants. | |

## I. SUMMARY

This action involves claims of insurance fraud in connection with the medical treatment of individuals injured in auto accidents. Before the Court is Defendants'[1] motion for summary judgment ("Defendants' Motion"). (ECF No. 222.) The Court has reviewed Plaintiffs'[2] response (ECF No. 242) and Defendants' reply (ECF No. 252). The Court also heard argument on the Motion on September 20, 2018 ("the Hearing"). For the reasons discussed below, Defendants' Motion is denied.

In addition, Plaintiffs filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 ("Plaintiff's Motion"). (ECF No. 285.) The Court has reviewed Defendants' response (ECF No. 298) and Plaintiffs' reply (ECF No. 309) and denies Plaintiffs' Motion.

## II. BACKGROUND

The following background facts are taken from the Complaint (ECF No. 1), which Defendants assume are true for purposes of their Motion. (ECF No. 222 at 5 n.5.)

Allstate alleges that the Doctors are treating physicians who violated federal and state RICO laws and committed a series of related torts by fraudulently inflating the medical bills of patients who have presented personal injury claims to Plaintiffs in order to leverage settlements from Plaintiffs. (ECF No. 1 at 5.) Plaintiffs made payments to over 300 claimants ("Claimants")—some were insured with Plaintiffs and others had claims against Plaintiffs' insureds—who were involved in automobile accidents based on medical bills for services allegedly provided by Defendants between 2006 and 2014. (*Id.* at 4-5; *see also* ECF No. 1-1.) Defendants caused these bills to be presented to Plaintiffs for payment knowing they were grossly exaggerated and were for services that were not medically necessary for the Claimants. (ECF No. 1 at 5.) Plaintiffs allege that Defendants

///

---

[1] Defendants are Majorie Belsky, MD; Mario Tarquino, MD; Majorie Belsky, MD, Inc. d/b/a Integrated Pain Specialists ("IPS"); and Mario Tarquin, MD, Inc. (collectively, "Defendants" or "the Doctors").

[2] Plaintiffs are Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company and Allstate Fire & Casualty Insurance Company (collectively, "Allstate" or "Plaintiffs").

rendered treatment to the Claimants based on a standardized patterned developed by Dr. Belsky and Dr. Tarquino "with the express purpose of creating inflated medical bills that would be used to leverage artificially enhanced settlement values to be paid by insurance companies rather than providing patient-centered treatment with the goal of actually treating or healing injuries." (*Id.*) This pattern involved Defendants allegedly generating "medical reports and billing records [that were presented to Plaintiffs] that falsely reported [the Claimants'] symptoms, complaints, and injuries . . . which were either exaggerated or not supported at all by the facts of the accident, that made pre-programmed, unsubstantiated findings and diagnoses and which prescribed treatment plans which were more consistent with generating large medical bills rather than patient-centered and evidence-based treatment of the patients' actual clinical conditions." (*Id.* at 7.) These medical bills and reports were presented to Plaintiffs by the Claimants' attorneys to demand payment or obtain settlement. (*Id.* at 10-11.) Upon each Claimant's initiation of treatment, Defendants would require them to execute a lien to secure payment for medical services to be made out of any settlement or judgment proceeds that would ultimately be paid by Plaintiffs. (*Id.* at 8.)

Plaintiffs assert the following claims: (1) violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c); (2) violation of RICO, § 1962(d); (3) fraud and intentional misrepresentation; (4) conspiracy to defraud; (5) violation of Nevada RICO, NRS § 207.400, and (6) constructive trust and unjust enrichment.

### III. DEFENDANTS' MOTION (ECF NO. 222)

Defendants' Motion presents the legal issues of the scope of the litigation privilege and witness immunity doctrines. Defendants present overlapping arguments on both doctrines in their Motion but conceded in their reply and at the Hearing that they rely on Nevada's litigation privilege to bar Plaintiffs' state law claims and the witness immunity

///

///

///

doctrine to bar Plaintiffs' federal RICO claims and state law claims.[3] (ECF No. 222 at 16.) For purposes of clarity, the Court will address each doctrine separately.

### A. Litigation Privilege

Defendants raise a threshold argument—issue preclusion—at the end of their Motion to contend that Plaintiffs are barred from relitigating the application of the litigation privilege. The Court will address issue preclusion first.

#### 1. Issue Preclusion

Defendants rely on *People ex. rel. Allstate Ins. v. Berg,* No. A139054, 2016 WL 661736 (Cal. Ct. App. Feb. 18, 2016), to argue that Plaintiffs should be estopped from relitigating the application of the litigation privilege in this case. (ECF No. 222 at 15-17; ECF No. 252 at 18-19.) Plaintiffs respond that the issue decided in *Berg* is not identical. The Court agrees with Plaintiffs.

"The doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (quoting *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979)). Under California law,[4] issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 387 (Cal. 2015).

In *Berg*, Allstate alleged the existence of an insurance fraud ring, claiming that certain defendant lawyers referred their clients to certain medical providers who would recommend unnecessary surgical procedures to allow the defendants to inflate their

///

---

[3]Defendants did not make this distinction in their Motion. Their discussion of the two doctrines were intertwined and they relied on Nevada Supreme Court cases and primarily other state court cases for additional support of the application of both doctrines. (*See* ECF No. 222 at 12-13.)

[4]"[A] federal court 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (quoting *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984)).

1 demands for payment under the insurance policies. 2016 WL 661736, at *1. Allstate sued
2 the lawyers and the medical providers. The lawyer defendants filed a special motion to
3 strike under California's anti-SLAPP statute, which the trial court denied. *Id.* at *2-3. The
4 court of appeals reversed, finding that the trial court erred in concluding that Allstate
5 demonstrated a probability of prevailing on the merits because the lawyer defendants
6 failed to show their demand letters were protected by the litigation privilege, as codified by
7 Civil Code section 47(b). *Id.* at *9. The court of appeals found that the gist of Allstate's
8 claims against the lawyer defendants was that they committed insurance fraud through
9 their sending of the prelitigation demand letters, and "[a]ttorney demand letters such as
10 these are a 'classic example' of communicative conduct to which the litigation privilege
11 applies." *Id.*

12 The issue decided in *Berg*—whether the litigation privilege protects the lawyers who
13 sent demand letters—is not identical to the issue presented in this case. Here, Plaintiffs
14 are suing Defendants in their role as medical providers, and Defendants assert the
15 litigation privilege protects their purportedly inflated bills and false medical reports. While
16 the lawyers in Berg based their demand letters on the medical providers' treatment
17 recommendations, demand letters are a "classic example" of privileged communicative
18 conduct and a key component of legal process. Medical bills and reports are not. Because
19 the issues are clearly dissimilar, the Court finds that Plaintiffs are not precluded from
20 arguing that the litigation privilege does not apply here.

### 2. Application of Litigation Privilege

22 Nevada courts have recognized "the long-standing common law rule that
23 communications uttered or published in the course of judicial proceedings are absolutely
24 privileged" so long as they are "in some way pertinent to the subject of controversy." *Fink*
25 *v. Oshins*, 49 P.3d 640, 643-44 (Nev. 2002) (quoting *Circus Circus Hotels, Inc. v.*
26 *Witherspoon,* 657 P.2d 101, 104 (Nev. 1983)). "The litigation privilege immunizes from
27 civil liability communicative acts occurring in the course of judicial proceedings, even if
28 those acts would otherwise be tortious." *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d

901, 902 (Nev. 2014). The privilege extends to "statements made with knowledge of falsity and malice." *Blaurock v. Mattice Law Offices*, No. 64494, 2015 WL 3540903, at *1 (Nev. App. May 27, 2015). Though the privilege originally formed as a defense to defamation, it has been expanded to cover a variety of torts. "The scope of the absolute privilege is quite broad," and "courts should apply the absolute privilege liberally, resolving any doubt in favor of its relevancy or pertinency." *Fink*, 49 P.3d at 644 (quoting *Club Valencia Homeowners v. Valencia Assoc.*, 712 P.2d 1024, 1027 (Colo. Ct. App. 1985)).

Defendants argue that their medical reports and invoices are protected by the litigation privilege because they were attached to demand letters that constitute communicative acts. (ECF No. 222 at 13-14.) Defendants offer no relevant Nevada case law to support a definition of "communicative acts" broad enough to cover purportedly fraudulent medical reports and invoices described in and attached to demand letters.[5] (*See id.* at 14 (citing cases involving prelitigation letters designed to protect a client's interests, memoranda, and demand letters).) At the Hearing, Defendants conceded that no other jurisdiction has addressed this issue or a similar one.[6] While Defendants appear

---

[5]In response to Plaintiffs' criticism that Defendants failed to offer relevant case law to support their expansive view of communicative acts (ECF No. 242 at 19-21), Defendants provided "a larger sampling" of cases in their reply brief (ECF No. 252 at 12-13). However, none of these cases involved extension of the litigation privilege to medical reports and invoices from treating providers. Several of the cases involved expert witness reports, but such reports are not analogous to the types of documents allegedly generated by Defendants to secure higher settlement amounts. *See, e.g.*, *Sandler v. Sweet*, 84 N.E.3d 544 (Ill. App. Ct. 2017) (finding that the absolute privilege extends to a report prepared by an expert witness); *Adams v. Peck,* 43 Md. App. 168 (Md. Ct. Spec. App. 1979) (extending the privilege to a report by a physician of a psychiatric evaluation of the parties' children in connection with a custody dispute). Expert witness reports are always prepared specifically for litigation—medical records are not.

[6]At the Hearing, Defendants point to *Wang v. Heck,* 137 Cal. Rptr. 3d 332 (Cal. Ct. App. 2012) as a case with somewhat similar facts. There, the court found that California's litigation privilege protected a treating physician from liability for statements made in a DMV evaluation form submitted with the patient's application to lift the suspension of his driving privileges. *Id.* at 337-38. The court concluded that the statements made in the DMV evaluation form were communications to the DMV in connection with a quasi-judicial proceeding and the physician "was a professional whose role as to the DMV's hearing was limited to evaluating [the applicant's] fitness for diving." *Id.* at 338. Thus, the physician in that case acted more like an expert witness than a medical provider—her aim was to gauge fitness for driving, not to provide treatment for a medical condition. Here, the *(fn. cont…)*

to concede that "underlying medical treatment" of the Claimants is non-communicative in nature, they do not explain how such treatment as noted in the medical reports is protected as prelitigation communication.[7] (*See id.* at 14.) Plaintiffs insist that Defendants' invoices and medical reports are business records and are not transformed into communicative acts for purposes of the litigation privilege simply because they were described in or attached to demand letters. (ECF No. 242 at 8, 24-25.)

The Court agrees with Plaintiffs that Defendants' medical reports and invoices are not communicative acts protected under the litigation privilege. These documents were forwarded to the lawyers who ultimately communicated with Plaintiffs via demands made in connection with each of the Claimants. However, they were not Defendants' communications. The medical reports recorded Defendants' treatment of the Claimants who were their patients, and the bills and invoices were generated to charge for such treatment. They bear no resemblance to the prelitigation demand letters in Defendants' cited cases, which courts have found to constitute communicative acts within the ambit of the litigation privilege.[8] (*See* ECF No. 222 at 14.) Moreover, Defendants' medical treatment of the Claimants, which is part of the challenged conduct in this action, is also not communicative in nature. Defendants conceded as much. (*See id.* (identifying "the

---

allegations go to Defendants' alleged fabrication of medical treatment and billing records, which are not prepared for the sole purpose of litigation.

[7]Defendants rely on the witness immunity doctrine to protect their underlying medical treatment of the Claimants. (*See* ECF No. 222 at 14 (asserting that Defendants serve as "fact witnesses in the 322 personal injury disputes" and cannot be liable for any communicative acts or related non-communicative acts).) But the Court finds that the witness immunity doctrine does not extend to protect non-testimonial evidence such as medical reports or treatment notes. *See* discussion *infra* Section III(C).

[8]Defendants cite to *Carpenter v. Shalev*, No. 51470, 367 P.3d 755, 2010 WL 3791485, at *2 (Nev. Sept. 28, 2010), an unpublished Nevada Supreme Court decision, for the proposition that the litigation privilege covers a physician's medical affidavit for purposes of a complaint. (ECF No. 222 at 12.) *Carpenter* involved a defamation claim against the physician who had submitted an expert affidavit in support of a medical malpractice claim against the plaintiff. The court found that the physician's expert affidavit was required for the medical malpractice complaint and amounted to privileged communications published in the course of judicial proceedings. 2010 WL 3791485, at *1-*2. The conduct alleged here does not involve any affidavit required to be filed in Defendants' capacity as expert witnesses but relates to their medical reports and bills evidencing treatment of the Claimants.

underlying medical treatment" as "any non-communicative acts related" to Defendants "assessing the claimants' damages").)

In sum, the Court finds that the litigation privilege does not apply to bar Plaintiffs' claims.

### C. Witness Immunity Doctrine

Defendants rely on the witness immunity doctrine established under Nevada law to protect from the state law claims and the same doctrine under federal common law to protect from the federal RICO claims. At the Hearing, Defendants conceded that application of the doctrine varies little under federal and state law. In fact, Nevada follows the standard that the Supreme Court applied in *Briscoe v. LaHue,* 460 U.S. 325 (1983). *See Harrison v. Roitman*, 362 P.3d 1138, 1140 (Nev. 2015) ("We similarly employ the functional approach [utilized in *Briscoe*] to determine whether the social utility of recognizing absolute immunity for party-retained experts is sufficiently great to justify their pardon from the burdens of litigation."); *State v. Second Jud. Dist. Ct.*, 55 P.3d 420, 426 (Nev. 2002) (applying the Supreme Court's functional approach to find that child protective service agents are protected under the absolute immunity doctrine when they provide information to the court).

In *Briscoe*, the Supreme Court addressed absolute immunity protection for police officers sued under 42 U.S.C. § 1983 for allegedly committing perjury in their trial testimony in connection with two cases. 460 U.S. at 326. The Court reiterated that the "immunity analysis rests on functional categories, not on the status of the defendant."[9] *Id.* at 342. The Court held that the officers who testified, like any other witnesses, are "absolutely immune from damages liability based on their testimony." *Id.* at 326. In so holding, the Court emphasized the function police officers performed in that situation:

///

---

[9]At the hearing, Defendants suggest that cases involving police officers are dissimilar because of their law enforcement role. But such distinction is of no import to the analysis—whether witness immunity applies depends on the function the individual performed, not their role. *Briscoe,* 460 U.S. at 342.

8

> When a police officer appears as a witness, he may reasonably be viewed as acting like any other witness sworn to tell the truth-in which event he can make a strong claim to witness immunity; alternatively, he may be regarded as an official performing a critical role in the judicial process, in which event he may seek the benefit afforded to other governmental participants in the same proceeding.

*Id.* at 335-336.

In *Franklin v. Terr*, 201 F.3d 1098 (9th Cir. 2000), the Ninth Circuit found that the witness immunity doctrine barred a claim for conspiracy to commit perjury against a psychiatrist who had testified as an expert, reasoning that doing so would permit a plaintiff to circumvent the absolute immunity protection for witnesses and undermine its purposes. *Id.* at 1101-02. "Absolute witness immunity is based on the policy of protecting the judicial process and is 'necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *Id.* at 1102 (quoting *Briscoe,* 460 U.S. at 334-35). The witness immunity doctrine thus protects testimony or statement that is the equivalent of testimony given in the course of a judicial proceeding. *See Rehberg v.* Paulk, 566 U.S. 356, 369-71 (2012) (testimony before a grand jury entitles the witness to the same immunity protection as testimony at trial in actions filed under 42 U.S.C. § 1983 because of the distinctive function performed in both proceedings, which is unlike the function performed by an officer who submitted an affidavit in support of an application for arrest warrant).

However, witness immunity has its limits. *Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001). Such "immunity does not shield non-testimonial conduct" nor does it shield "from liability for any conspiratorial conduct not 'inextricably tied' to [the witness's] testimony." *Id.* at 981-82 (affirming the district court's finding that "absolute witness immunity does not shield an out-of-court, pretrial conspiracy to engage in non-testimonial acts such as fabricating or suppressing physical or documentary evidence or suppressing the identities of potential witnesses"); *see Cunningham v. Gates,* 229 F.3d 1271, 1291 (9th Cir. 2000) ("Obviously, testimonial immunity does not encompass non-testimonial acts such as fabricating evidence."). Moreover, the burden is on the party seeking witness immunity to establish entitlement to immunity. *See Genzler v. Longanbach,* 410 F.3d 630,

636 (9th Cir. 2005) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)) ("The Supreme Court has consistently 'emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'").

Defendants argue that as treating physicians their role was to serve as witnesses in the Claimants' personal injury disputes, and the conduct that served as the basis of Plaintiffs' claims—Defendants' statements relating to the medical reports and billings for medical treatment—would have been part of their eventual testimony in the Claimants' personal injury disputes. (ECF No. 222 at 10-11.) They reason that because the Doctors would have been expected to testify in the litigation involving the Claimants—including the negotiation and settlement of claims—their role as witnesses entitles them to absolute immunity. (*Id.*) Plaintiffs counter that the conduct about which they complained does not amount to testimony but instead involved non-testimonial evidence (i.e., "medical records, reports, bills, and invoices"), which they allege Defendants fabricated to inflate the settlement value of the claims. (ECF No. 242 at 3-4, 18-19.) Plaintiffs assert that Defendants' "medical record keeping, production of medical treatment reports and recommendations, and production of bills and invoices for services rendered are not transformed into communicative or testimonial acts for the purposes of a judicial proceeding merely because they may be called as deposition or trial witnesses in personal injury lawsuits." (*Id.* at 12.) The Court agrees with Plaintiffs.

The claims asserted here are based on allegations that Defendants falsified information in their role as treating physicians—either Defendants overtreated or falsified treatment records to obtain higher payments from Plaintiffs. Defendants' alleged conduct goes to their role as treating physicians, not as witnesses as Defendants assert. Moreover, even accepting Defendants' characterization that the challenged conduct consists of statements they made relating to the Claimants' medical treatment as reflected in the medical reports and invoices, such statements are not the functional equivalent of testimony given in the course of judicial proceedings based on Plaintiffs' allegations. They are statements reflecting treatment, both lack of treatment in some cases and

1 overtreatment in other cases according to Plaintiffs. Indeed, Defendants' conduct is
2 analogous to "pretrial conspiracy to engage in non-testimonial acts such as
3 fabricating . . . evidence" that the Ninth Circuit has found to be outside the protection of
4 witness immunity. *See Paine*, 265 F.3d at 983. The fact that Defendants may expect to
5 testify consistently with their purportedly fabricated evidence in proceedings involving the
6 Claimants is not a shield to protect from liability for alleged conduct that they engaged in
7 pre-litigation to manipulate evidence before they testified.

Defendants argue that "eventual testimony" is protected and "*anything done in preparation of providing such testimony is protected as well*." (ECF No. 252 at 5 (emphasis in original) (citing *Buckley,* 919 F.2d at 1245).) Defendants reason that the medical reports and invoices "were written versions of their future testimony." (*Id.* at 7.) But the cases they rely on involved expert witnesses and the work they performed in preparing for their testimony.[10] *See Franklin,* 201 F.3d at 1098; *Urbina v. Carson,* No. 1:07-cv-00153 OWW NEW (TAG), 2007 WL 2814652, at *10 (E.D. Cal. Sept. 25 2007) ("The fact gathering function of an expert should not be deterred and is subject to absolute witness immunity."). In contrast, Defendants' alleged conduct involved their role as treating physicians and statements made in their performance of their function as doctors, not as expert witnesses who are preparing to testify to offer their opinions.

Finally, Defendants insist that applying the litigation privilege and witness immunity doctrines to bar Plaintiffs' claim advances important public policy. These doctrines are based on the same public policy. (ECF No. 222 at 17-19.) "The policy underlying the

///

---

[10]Defendants also rely on *Duff v. Lewis*, 958 P.2d 82 (Nev. 1998), to suggest that the witness immunity doctrine extends to "all person[s] who are an integral part of the judicial process." (ECF No. 222 at 12 (alteration in original) (quoting *Duff*, 958 P.2d at 85).) However, *Duff* also involves expert testimony. In *Duff,* the court extended absolute judicial immunity to a psychologist appointed by the court to perform psychological assessments and prepare recommendations for the court that the court subsequently adopted in its decision. 958 P.2d at 87. The court in *Duff* held that absolute quasi-judicial immunity extends to the court-appointed psychologist because "(1) at least to some extent, his evaluations and recommendations aided the trial court in determining child custody, and (2) his services were performed pursuant to a court order." *Id.* (quoting *Lavit v. Superior Court*, 839 P.2d 1141, 1146 (Ariz. App. 1992)).

1 [litigation] privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." *Circus Circus Hotels*, 657 P.2d at 104. "The purpose of [witness] immunity is to encourage witnesses to come forward and speak freely in court by relieving the potential defendant of any fear that he will later have the burden of litigating the propriety of his conduct as a witness." *Paine*, 265 F.3d at 980 (9th Cir. 2001) (citing *Briscoe*, 460 U.S. at 335-36).) Extending the litigation privilege and witness immunity to the conduct alleged here would not serve the purpose of promoting those involved in judicial proceedings to "speak freely." To the contrary, it would encourage the fabrication of evidence in an attempt to leverage settlement, and fabrication of evidence is unsurprisingly not entitled to protection. *Cunningham,* 229 F.3d at 1291.

## IV. PLAINTIFFS' MOTION (ECF NO. 285)

Plaintiffs seek sanctions pursuant to Rule 11, contending that Defendants' Motion presents frivolous arguments that are not legally supported and are contrary to established law.[11] (ECF No. 285.) Plaintiffs' Motion is deficient procedurally and substantively. In terms of procedure, Plaintiffs' Motion exceeds the limit on the length of brief. LR 7-3(b) (setting 24-page limit on non-dispositive motions). Plaintiffs filed their Motion before the Court ruled on Defendants' Motion, reflecting their assumption they would prevail. And Plaintiffs' Motion is essentially a transparent attempt to re-argue their response to Defendants' Motion. In terms of substance, while Defendants' Motion is legally deficient, the Court

///

---

[11]The parties devoted substantial efforts to discussing Defendants' reliance on *Buckley v. Fitzsimmons,* 919 F.2d 1230 (7th Cir. 1990). (*See* ECF No. 285 at 31-33; ECF No. 298 at 15-16.) The court in *Buckley* considered several issues, including the scope of absolute immunity extended to a prosecutor, and the absolute immunity extended to three expert witnesses relating to their pretrial activities: "evaluating the bootprint, writing reports, discussing the case with prosecutors, and preparing to testify." *Id.* at 1244-45. Defendants are correct that the part of that decision addressing witness immunity of the expert witnesses was not reversed. The Supreme Court vacated and remanded the judgment in *Buckley*, *id.*, "for further consideration in light of *Burns v. Reed,* 500 U.S. 478 [1991]." *Buckley v. Fitzsimmons,* 502 U.S. 801 (1991). *Burns* involves the scope of absolute immunity extended to prosecutors; it did not address immunity of the other witnesses who provided testimony. 500 U.S. at 481.

cannot find it to be frivolous or improper. To the extent Defendants seek fees and costs for responding to Plaintiffs' Motion (ECF No. 298 at 5), that request is also denied.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' motions.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 222) is denied.

It is further ordered that Plaintiffs' motion for sanctions (ECF No. 285) is denied.

DATED THIS 21st day of September 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE